IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TROY DWAYNE SHAW,

    Plaintiff,

vs.                                                                                                           No. CIV 17-0147 JB/LF

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Unopposed Motion for Approval of the Settlement of Plaintiff Troy Dwayne Shaw's Claims, filed June 6, 2018 (Doc. 74)("Motion"). The Court held a hearing on June 11, 2018. The primary issue is whether Plaintiff Troy Dwayne Shaw's attorneys may recover, in a settlement agreement, New Mexico gross receipts tax payments beyond the twenty-five percent attorney's fees cap in the Federal Tort Claims Act, 28 U.S.C. § 2678 ("FTCA"). The Court concludes that gross receipts tax obligations are neither taxable costs nor attorney's fees, so passing those obligations on to FTCA plaintiffs does not implicate the FTCA's attorney's fees cap. Accordingly, the Court will grant the Motion and approve Shaw's settlement.

## FACTUAL BACKGROUND

This case began following an alleged sexual assault. Shaw was a patient at the Veteran's Administration Medical Center ("VA Hospital") in Albuquerque, New Mexico, where he was seeking treatment for mental health problems. Second Amended Report of the Guardian ad Litem at 1-2, filed June 12, 2018 (Doc. 77)("Report"). During the early morning hours of January 13, 2016, another patient "was permitted to wander the halls of the Ward and enter Mr.

Shaw's room," where he allegedly sexually assaulted Shaw. Report at 1.

## PROCEDURAL BACKGRUND

Shaw sues Defendant United States of America under the FTCA, alleging that the VA Hospital's negligence caused the assault. See Complaint to Recover Damages for Personal Injury ¶ 34, at 6, filed February 1, 2017 (Doc. 1)("Complaint"). The Court appointed a guardian ad litem ("GAL"), because Shaw was "committed to the Las Vegas Behavioral Health Institute during the pendency of this case." Report at 2-3. See Order to Appoint Guardian ad Litem at 1, filed August 14, 2017 (Doc. 23). More specifically, Shaw has "been determined to be 100% disabled as a result of PTSD from . . . military sexual trauma." Report at 2. After discovery, the parties agreed to settle the case for $150,000.00. See Report at 3. The GAL recommends that Shaw's attorneys be awarded $37,500.00 in attorney's fees -- twenty-five percent of the settlement -- plus gross receipts tax payments of $2,812.50, and costs of $16,249.32. See Report at 7. The GAL states: "These costs include filing fees, expert fees, travel expenses, and deposition fees." Report at 7. The GAL further recommends that the Court approve the settlement. See Report at 7. In the Motion, the parties ask the Court to approve the settlement. See Motion at 1-2.

1. **The Hearing.**

The Court held a hearing on June 11, 2018. See Draft Transcript of Motion Hearing at 1:9-11 (taken June 11, 2018)("Tr.")(Court).[1] The Court began by stating that the one question it had about the proposed settlement involved the gross receipts tax. See Tr. at 4:10-11 (Court). Specifically, the Court questioned whether the New Mexico gross receipts tax should be considered part of the attorney's fee or a separate cost for FTCA purposes. See Tr. at 4:14-15

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

(Court). Shaw responded that he was unsure how gross receipts payments should be classified. See Tr. at 5:14-17 (Touchet). The United States asserted that gross receipts payments should be included within the FTCA's twenty-five percent cap on attorney's fees. See Tr. at 6:10-13 (Langenwalter). The United States continued that, "if they are going to call it out separately, then it needs to be included within the 25 percent. If they want to call it out as costs with their client, then that's an issue on a settlement of this size that I'm not going to get involved in." Tr. at 6:23-7:2 (Langenwalter). The United States added that, if this case involved a one million dollar settlement, gross receipts would be included as part of attorney's fees. See Tr. at 7:9-11 (Langenwalter).

Shaw's GAL, Timothy White, responded that state law should determine whether gross receipts payments are costs or attorney's fees. See Tr. at 8:15-17 (White). The Court replied that federal law will decide what a fee is within the FTCA's meaning, although state law "may be of interest in determining what a gross receipts tax is." Tr. at 9:4-9 (Court). The Court continued that

> I'm not sure that you can just . . . call something a cost if it's not -- if it's not a cost. That's something that I'm struggling with a little bit in the sense that the way New Mexico structures its gross receipts tax, it's not probably a real cost. It's, instead, something that falls upon the taxpayer. I mean, it falls no differently than the federal income tax.

Tr. at 9:22-10:2 (Court). The Court then asked Mr. White to discuss the rest of the settlement. See Tr. at 10:8-9 (Court). Mr. White recommended that the Court approve the settlement, stating that "we all believe that this is in Troy's best interest to be able to settle this case now under the proposal that's been presented to the Court." Tr. at 10:23-25 (White). The Court replied that the settlement is a good resolution to the case and that it questions only the gross receipts tax issue. See Tr. at 11:14-25 (Court). At the hearing's conclusion, the Court invited the parties to submit

to the Court any authorities on the gross receipts tax issue.  See Tr. at 11:19-22 (Court).

    **2.**    **The Letter.**

After the hearing, the United States submitted a letter to the Court.  See Letter from Assistant United States Attorney Erin E. Langenwalter to the Court at 1-3 (dated June 11, 2018), filed July 25, 2018 (Doc. 78)("Letter").  In the Letter, the United States asserts that, "in the absence of state law treating the tax payment as a litigation cost," the gross receipts tax should be included in the FTCA's twenty-five percent cap.  Letter at 2.  The United States notes that it cannot find any New Mexico or United States Court of Appeals for the Tenth Circuit cases regarding the gross receipts tax's treatment under the FTCA, but it asserts that at least one judge has held that gross receipts tax payments are not "fees and expenses" within the meaning of the Equal Access to Justice Act., 28 U.S.C. 2412(d)(2)(A).  Letter at 2 (citing N.L.R.B. v. Pueblo of San Juan, 305 F. Supp. 2d 1229, 1238 (D.N.M. 2003)(Vazquez, C.J.)).  The Letter further notes that the Tenth Circuit has held that a district court did not abuse its discretion in disallowing gross receipts tax recovery in a Truth in Lending Act[2] case.  See Letter at 2 (citing Herrera v. First Northern Savings & Loan Ass'n, 805 F.2d 896, 902 (10th Cir. 1986)).  The Letter concludes that the gross receipts tax "should be included in the 25% limitation on fees under the FTCA so as not to subject [the United States] to having to prosecute a claim on behalf of a plaintiff who later argues the fees unauthorized."  Letter at 2-3.

## LAW REGARDING THE FTCA

As with any jurisdictional issue, the party bringing the suit against the United States bears the burden of proving that Congress has waived sovereign immunity.  See James v. United States, 970 F.2d 750, 753 (10th Cir. 1992).  It is "axiomatic that the United States may not be

---

[2] 15 U.S.C. § 1601 et seq.

sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). "Challenges to jurisdiction can . . . be raised at any time prior to final judgment." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004)(citing Capron v. Van Noorden, 6 U.S. (2 Cranch) 126 (1804)).

The terms of the United States' consent define the parameters of federal court jurisdiction to entertain suits brought against it. See United States v. Orleans, 425 U.S. 807, 814 (1976); Ewell v. United States, 776 F.2d 246, 248 (10th Cir. 1985). When the United States waives its immunity from suit, a court should neither narrow the waiver nor "take it upon [itself] to extend the waiver beyond that which Congress intended." Smith v. United States, 507 U.S. at 203 (quoting United States v. Kubrick, 444 U.S. 111, 117-18 (1979)).

In 1948, Congress enacted the FTCA, which waives the United States' sovereign immunity for certain torts that federal employees commit. See FDIC v. Meyer, 510 U.S. 471, 475 (1994). Congress waives sovereign immunity only for certain torts that United States employees cause while acting within the scope of their office or of their employment. See 28 U.S.C. § 1346(b); Warren v. United States, 244 F. Supp. 3d 1173, 1212 (D.N.M. 2017)(Browning, J.).

1. **Exhaustion Requirements.**

There are certain procedural requirements in suing the United States under the FTCA to which a plaintiff must strictly adhere before a district court can exercise jurisdiction. The FTCA's jurisdictional statute provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim

shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a)(emphasis added). This statute "requires that claims for damages against the government be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 852 (10th Cir. 2005)(Tymkovich, J.)(quoting Bradley v. United States ex. rel. Veterans Admin., 951 F.2d 268, 270 (10th Cir. 1991)(Anderson, J.)).

"[A] claim should give notice of the underlying facts and circumstances 'rather than the exact grounds upon which plaintiff seeks to hold the government liable.'" Staggs v. United States ex rel. Dep't of Health and Human Servs., 425 F.3d 881, 884 (10th Cir. 2005)(McConnell, J.)(quoting Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853). The Tenth Circuit has added that "the FTCA's notice requirements should not be interpreted inflexibly." Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853. Whether a plaintiff's administrative claim is sufficient to meet 28 U.S.C. § 2675(a)'s notice requirement is a question of law. See Staggs v. United States ex rel. Dep't of Health and Human Servs., 425 F.3d at 884; Warren v. United States, 244 F. Supp. 3d at 1213.

### 2. **Filing Deadlines.**

The Tenth Circuit recently observed:

[T]he FTCA has both an administrative-exhaustion requirement, set forth in 28 U.S.C. § 2675(a), and a statute of limitations, set forth in 28 U.S.C. § 2401(b). Combined, these provisions act as chronological bookends to an FTCA claim, marking both a date before which a claim may not be filed and a date after which any filing is untimely.

Barnes v. United States, 776 F.3d 1134, 1139 (10th Cir. 2015)(Holmes, J.). Once a tort claim accrues against the United States, 28 U.S.C. § 2401 gives a claimant two years to present that

claim in writing to the appropriate federal agency. See 28 U.S.C. § 2401(b)(explaining that claim is "forever barred" unless presented within two years). After submission of a written claim, the agency usually has six months to reach a final disposition on the claim. If the agency denies the claim, the claimant has six months to file suit in federal court. See 28 U.S.C. § 2401(b).

If the agency fails to make a final disposition of the claim within six months, the claimant may "deem[]" that failure a "final denial of the claim," and proceed with his or her suit under the FTCA. 28 U.S.C. § 2675(a). In the Tenth Circuit, "(at least until there has been a final denial by the relevant agency) there is no limit on when a plaintiff may file a lawsuit predicated on a deemed denial." Barnes v. United States, 776 F.3d at 1140-41. An agency may "trigger[] § 2401(b)'s six-month limitations period through final denial of administrative FTCA claims after a 'deemed denial.'" Barnes v. United States, 776 F.3d at 1141. See Warren v. United States, 244 F. Supp. 3d at 1213.

### 3. **Effect of Failure to Exhaust.**

"[A]s a general rule, a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit." Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999)(internal quotation marks omitted). This rule exists, because "[a]llowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." Duplan v. Harper, 188 F.3d at 1199. Courts must dismiss these claims "without regard to concern for judicial efficiency." Ruppert v. Aragon, 448 F. App'x 862, 863 (10th Cir. 2012)(O'Brien, J.)(unpublished). Even the filing of an amended complaint may not serve to cure a prematurely

filed original complaint. See Stevens v. United States, 61 F. App'x 625, 627 (10th Cir. 2003)(Baldock, J.)(unpublished).

There is at least one limited exception to the general rule. Duplan v. Harper recognizes an exception where the United States "expressly agreed" to the district court's decision to treat the amended complaint as a new action. 188 F.3d at 1199. See Mires v. United States, 466 F.3d 1208, 1211 (10th Cir. 2006)(McConnell, J.)(concluding that there is a new action where plaintiff "sought permission to file -- and, with the government's consent and district court's permission, did file -- an amended complaint"). See Warren v. United States, 244 F. Supp. 3d at 1214.

### 4. Definition of "Sufficient Notice".

Courts define "sufficient notice" based on the facts of each case before them. In Estate of Trentadue ex rel. Aguilar v. United States, the United States contended that the plaintiffs' administrative claim was insufficient for notice of intentional infliction of emotional distress, because it was based on a theory that prison officials had murdered Trentadue, the inmate, and the allegations did not discuss the specific grounds on which the district court relied in awarding damages, "namely the government's treatment of the Trentadue family in the aftermath of his death and its actions in conducting an autopsy after claiming that no autopsy would be performed without prior approval." 397 F.3d at 852. The Tenth Circuit disagreed, holding that the "plaintiffs' administrative claim provided notice that [the United States Department of Justice] should investigate the prison officials' conduct." 397 F.3d at 853. The Tenth Circuit reasoned that language within the administrative claim "gave DOJ notice of the facts and circumstances surrounding plaintiffs' emotional distress claim and, moreover, is consistent with the plaintiffs' subsequent allegations in their amended complaints." 397 F.3d at 853.

The Tenth Circuit contrasted Estate of Trentadue ex rel. Aguilar v. United States with Dynamic Image Techs., Inc. v. United States, 221 F.3d 34 (1st Cir. 2000)(Selya, J.), where the United States Court of Appeals for the First Circuit held that the plaintiff's administrative claim did not put the agency on notice that it should have investigated the potentially tortious conduct, because the plaintiff's administrative claims were for "misrepresentation, libel, slander, contractual interference, and discrimination," and the amended claims for false arrest arose out of two separate incidences. 221 F.3d at 40. The First Circuit stated: "Though prolix, that claim did not contain so much as a hint about the alleged false arrest or the incident that spawned it." 221 F.3d at 40. The First Circuit thus concluded that, "regardless of the labels employed in the amended complaint, that complaint, in substance, seeks recovery based solely on an incident that was not mentioned in the plaintiffs' administrative claim." 221 F.3d at 40 (emphasis omitted).

In Glade ex rel. Lundskow v. United States, 692 F.3d 718 (7th Cir. 2012), a man receiving mental health treatment at a VA facility alleged that his therapist worsened his condition by initiating a sexual relationship with him. See 692 F.3d at 720. He filed a notice of claim with the VA that "does not mention a failure of anyone to use due care besides the therapist." 692 F.3d at 722. The United States Court of Appeals for the Seventh Circuit, reviewing the notice, commented that "reading the administrative claim you would think the plaintiff was just seeking damages under a theory of respondeat superior against an employer for an employee's battery, and we know that such a theory won't fly under the Tort Claims Act." 692 F.3d at 722. The plaintiff recognized this problem before filing his complaint and thus asserted a "special relationship" theory of liability instead. 692 F.3d at 723. The Seventh Circuit affirmed the district court's decision to dismiss the suit, explaining:

> The administrative claim need not set forth a legal theory, but it must allege facts that would clue a legally trained reader to the theory's applicability. *Palay v.*

> *United States,* 349 F.3d 418, 425-26 (7th Cir. 2003); *Murrey v. United States,* 73 F.3d 1448, 1452-53 (7th Cir. 1996). The plaintiff's claim didn't do that. The legally trained reader would assume that the plaintiff simply was unaware that the mere fact of a battery by a VA employee would not impose liability on the employer. We're about to see that the "special relationship" tort theory advanced in the plaintiff's complaint (as distinct from the administrative claim) is outside the bounds of plausibility -- hardly the sort of theory that the VA's legal department should have guessed would be the ground of a lawsuit.

692 F.3d at 722-23. See <u>Warren v. United States</u>, 244 F. Supp. 3d at 1215.

### 5. **Medical Cases.**

Some courts have required the claimant to provide extensive information about the injuries that the complaint alleges. In <u>Staggs v. United States ex rel. Dep't of Health and Human Servs.</u>, the Tenth Circuit held that the plaintiff's administrative claim, accusing the hospital of "a substantial departure from the standard of care and . . . negligent management of her pregnancy and labor," was not sufficient to put the agency on notice that it should have investigated a claim based on lack of informed consent. 425 F.3d at 884. The Tenth Circuit stated that "[n]othing in Staggs' administrative claims suggests that Staggs consented to a course of treatment or remained on such a course without being informed of her options and risks." 425 F.3d at 884. The Tenth Circuit reasoned that, "given the length and factual specificity of Staggs' description of [the administrative] claim," and the claim's failure to "mention [] consent or a suitable synonym, [the government agency] could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary." 425 F.3d at 885.

<u>Ham v. United States</u>, 2008 WL 818197 (W.D. Penn. March 26, 2008)(McVerry, J.), a similarly restrictive case, involves a prisoner's claims against three dentists who attempted to fix a damaged tooth. See 2008 WL 818197, at *4. The plaintiff's administrative claim focused on

the first two dentists' alleged errors, mentioning the third dentist only in passing. The complaint, however, focused on the third dentist's refusal to repair, rather than extract, the tooth. See 2008 WL 818197, at *4. Although that court said that the claim "encompasses any cause of action fairly implicit in the facts," it dismissed the complaint, because it "offers the first notice that [the third dentist's] actions were legally objectionable." 2008 WL 818197, at *4.

In Palay v. United States, 349 F.3d 418 (7th Cir. 2003)(Rovner, J.), a prisoner sent a notice of a claim charging the Bureau of Prisons with failing to protect him from violence at the hands of fellow inmates and describing his injuries, but omitting "facts suggesting that the prison medical staff had treated him inappropriately." 349 F.3d at 426. The prisoner later brought suit on a medical malpractice theory. The Seventh Circuit held that, although it was a "close[] question," the prisoner failed to provide sufficient notice, because he "did not include facts in his [notice] from which a legally sophisticated reader might have discerned that he had received inadequate medical treatment." 349 F.3d at 427. The Seventh Circuit noted that "a complete investigation of Palay's injuries and the treatment he had received might well have disclosed the facts underlying his medical claim; and in the Fifth Circuit, that would be enough to put the government on notice of such a claim. *See Frantz v. United States*, 29 F.3d 222, 224-25 (5th Cir. 1994). But we have expressly declined to go as far as the Fifth Circuit has in that regard." 349 F.3d at 427.

The Court has been more generous. In Coffey v. United States, 906 F. Supp. 2d 1114 (D.N.M. 2012)(Browning, J.), the Court determined that a ninety-word claim that alleged that a prisoner's "medical condition was ignored, that he was denied medication, and that he was transferred by the [United States Bureau of Indian Affairs]" provided sufficient notice of his mother's negligent screening and transfer theories. 906 F. Supp. 2d at 1153-54. The Court

concluded that the claim, despite its brevity, "gave the BIA notice of the facts and circumstances surrounding [plaintiff Coffey's deceased son] Crutcher's medical needs and subsequent death [sufficient] to provide the BIA notice that it should have investigated the underlying conduct." 906 F. Supp. 2d at 1154.

## ANALYSIS

The Court concludes that gross receipts tax obligations are not taxable costs -- i.e. costs that prevailing parties can recover from losing parties. See Taxable Cost, Black's Law Dictionary (Bryan Garner, ed., 10th ed. 2014)("A litigation-related expense that the prevailing party is entitled to as part of the court's award."). Additionally, gross receipts tax obligations are not attorney's fees, so passing those obligations on to FTCA plaintiffs does not implicate the FTCA's attorney's fees cap. Accordingly, the Court will grant the Motion and approve Shaw's settlement.

**I.  GROSS RECEIPTS TAX PAYMENTS ARE NEITHER TAXABLE COSTS NOR ATTORNEY'S FEES.**

Under the FTCA, "[n]o attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to section 1346(b) of this title or any settlement made pursuant to section 2677 of this title." 28 U.S.C. § 2678. The key word for this case's purposes is fee. If gross receipts tax payments are not fees, then such payments above the twenty-five percent cap do not violate the statute.

As a threshold matter, gross receipts tax payments are not taxable costs. 28 U.S.C. § 1920 states that a federal court may tax as costs an enumerated list of expenses, including transcript fees, marshal fees, docket fees, and other things. See 28 U.S.C. § 1920(1)-(6). That list does not include, however, anything resembling a tax payment. See Williams v. Astrue, No. CIV 10-0295, 2011 WL 13284607, at *2 (D.N.M. 2011)(Martinez, M.J.)(holding that section

1920 "enumerates the costs that are reimbursable, none of which include gross receipts taxes"); Daniel A. Morris, Federal Tort Claims § 4:18 (2018) ("A judgment for costs, not including the fees and expenses of attorneys, may be awarded in an action under the Federal Tort Claims Act. Recoverable costs are limited to those described in 28 U.S.C.A. § 1920.").

Additionally, gross receipts tax payments are not attorney's fees. Instead, they are a tax on a fee. Attorney's fees are best understood as compensation for services performed, and not tax liability. Attorney's fees, for FTCA purposes, are compensation "for services rendered." 28 U.S.C. § 2678. A similar statute defines the phrase "fees and other expenses" to include expert witness expenses, attorney fees, and other things.[3] 28 U.S.C. § 2412(d)(2)(A). The statute does not define attorney's fees more specifically, but it explains that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). That the statute limits attorney's fees by proscribing a maximum hourly rate indicates that attorney's fees are akin to wages, i.e., compensation for services performed. Further, Black's Law Dictionary defines an "attorney's fee" as "[t]he charge to a client <u>for services performed for the client</u>, such as an hourly fee, a flat fee, or a contingent fee." Black's Law Dictionary 154 (10th ed. 2014)(emphasis added).

Finally, the Tenth Circuit, in an FTCA case involving a guardian ad litem, discusses whether guardian ad litem payments "should be taxed as costs pursuant to Rule 54(d) or deducted as attorney's fees from the judgment pursuant to 28 U.S.C. § 2678," the statute at issue

---

[3]At least one case has held that a plaintiff is not entitled to an award of gross receipts tax payments, because they are not an "expense" under 28 U.S.C. 2412(b). Williams v. Astrue, 2011 WL 13284607, at *2. Shaw's case, however, is about whether gross receipts tax payments are "fees" within the FTCA's meaning, and not about whether such payments are "expenses" under 28 U.S.C. § 2412(b).

in this case. Hull by Hull v. United States, 971 F.2d 1499, 1510 (10th Cir. 1992)(Ebel, J.). The Tenth Circuit explained that such a determination "depends upon the role that the guardian ad litem plays." Hull by Hull v. United States, 971 F.2d at 1510. "To the extent the guardian ad litem performs legal services as an attorney, compensation should be deducted as attorney's fees." Hull by Hull v. United States, 971 F.2d at 1510. The Tenth Circuit's characterization of 28 U.S.C. § 2678 as a statute about "compensation" suggests that gross receipts payments are not "fees" within that statute's meaning. Compensation is what a client pays an attorney for services. Gross receipts tax payments, however, like the federal income tax, represent a tax on a fee regardless whether the attorney charges the client for it; "it's due even if the seller doesn't charge the buyer." Finance New Mexico, "Get a Handle on Gross Receipts Tax if Doing Business in New Mexico," https://financenewmexico.org/articles/general-business-advice/get-a-handle-on-gross-receipts-tax-if-doing-business-in-new-mexico/. When an attorney charges a client for the attorney's gross receipts tax obligations, that charge does not compensate the attorney for the services that the attorney performs; instead, the attorney has to turn around and pay that money to New Mexico. See N.M. Stat. Ann. § 7-9-4(A)(stating that the gross receipts tax is "imposed on any person engaging in business in New Mexico"). In other words, when an attorney charges a client for the attorney's gross receipt tax obligations, the attorney seeks reimbursement for an expense that the attorney would not have incurred but for the client's representation. The attorney is not seeking compensation for "services rendered." 28 U.S.C. § 2678. For these reasons, the Court concludes that gross receipts tax payments are not "fees" within 28 U.S.C. § 2678's meaning, so the FTCA's twenty-five percent cap does not apply to them.

A problem remains, however. Especially in the settlement context, what constitutes a fee versus a cost or another payment may not always be clear, and the Court should not interpret the word fee in the FTCA so narrowly that attorneys might structure settlements in such a way as to circumvent Congress' decision to limit attorney's fees to twenty-five percent of the settlement. See 28 U.S.C. § 2678. Although the FTCA limits attorney's fees recovery, and not costs or expenses, see 28 U.S.C. § 2678; North Atlantic & Gulf S.S. Co. v. United States, 209 F.2d 487, 489 (2d Cir. 1954)(holding that "[t]he provisions for the allowance of attorney's fees in Title 28, Section 2678 relate to the fees attorneys may be allowed out of the amount recovered from the government and not to costs against the government in addition to such recoveries"), attorneys should not be able to circumvent the twenty-five percent fee cap by labeling payments as costs, expenses, or other things, when such payments are, in operation, fees. To be sure, "[t]he settlement of a lawsuit embodies the essence of freedom of choice." In re Pfiester, 449 B.R. 422, 425 (Bankr. D.N.M. 2011)(Starzynski, J.). Just as a plaintiff and a defendant are generally free to structure a settlement as they wish, so too may a party and his attorney generally contract regarding who will pay attorney's fees, costs, and expenses of litigation.[4] In the FTCA,

---

[4]In this case, "the proposed settlement is for $150,000.00 for all of Mr. Shaw's claims," and the settlement proceeds will be distributed in a certain manner to Shaw "after the deduction for attorneys' fees, taxes and costs." Report at 6. The Court does not know all of the details regarding the fee agreement between Shaw and his attorneys, but the Court is concerned with settlement offers in which a defendant offers a plaintiff a lump sum for liability, fees, and costs. Such a situation creates a conflict between the plaintiff and his attorney in circumstances in which they have not previously agreed to a fee arrangement or their fee agreement is unclear on all issues. Once the defendant leaves a check on the table, the plaintiff and his attorney may quarrel over who gets what amount. Nevertheless, the State Bar of New Mexico Ethics Advisory Opinions Committee has advised that, "in cases involving only damages, it is not ethically improper for a defendant to offer nor for a plaintiff to accept a lump sum settlement representing damages, costs, and attorney's fees." State Bar of New Mexico Ethics Advisory Opinion 1985-3 at 2, available at https://www.nmbar.org/NmbarDocs/AboutUs/committees/Ethics/1985/1985-3.pdf ("Advisory Opinion."). The Advisory Opinion notes, however, that, although "[n]o federal court, nor apparently any state court, has prohibited simultaneous settlement negotiations of

Congress capped attorney's fees, but as to all other items -- costs, expenses, and taxes -- Congress was silent, presumably letting the parties negotiate these payments.

A rule of reason should exist, however, so that, in structuring settlements, attorneys cannot circumvent the FTCA's twenty-five percent cap by labeling compensatory items as something other than fees, when such payments operate as de facto fees. Based on Congress' legislative intent, the Court concludes that payments that the legal industry commonly accepts and classifies as payments other than attorneys' fees should not count toward the FTCA's twenty-five percent cap on "fees." 28 U.S.C. § 2678. Non-industry standard payments, compensatory in nature, that cannot fairly be classified as costs or expenses, should count as fees for FTCA purposes, even if they are not labeled as fees.

When Congress amended the FTCA's attorney's fees provision to create the twenty-five percent cap, it intended to incentivize good attorneys to take FTCA cases. Congress noted that "this amendment will bring the fees more nearly in line with those prevailing in private practice." 112 CONG. REC. S14378 (June 27, 1966).[5] "To assure competent representation and reasonable

---

damages and fees . . . several courts have indicated displeasure with such negotiations." Advisory Opinion at 2. Because of the conflict created between a client and his own attorney in these situations, the Court shares this displeasure. Indeed, "[i]n FTCA litigation it is highly desirable that a plaintiff's attorney and his or her client have a written agreement at the very outset of the employment of counsel stating the amount of the attorney's fee as well as whether the costs of the litigation are to be paid by the client." Daniel A. Morris, Federal Tort Claims § 4:18 (2018). Regardless, the District of New Mexico has adopted New Mexico's Rules of Professional Conduct, see D.N.M.LR 83.9, and New Mexico's ethics committee has advised that lump sum settlements are permissible. See Advisory Opinion at 2.

[5]The Court notes that today, a twenty-five percent fee no longer represents what an attorney may earn in private practice. When Congress passed the current attorney's fees provision in 1966, however, it stated

> [t]he bill increases the allowable fee in agency proceedings from the present 10 to 20 percent. The committee feels this increase will encourage attorneys to take these claims. In recommending this increase the committee points out that increased work will be required in many of the larger claims. Also, this

compensation in these matters, the proposed bill authorized increases in the attorneys' fees allowable under the successful prosecution of these claims." 112 CONG. REC. S14378 (June 27, 1966). This legislative history shows that Congress' intent in amending the FTCA's attorney's fees provision was to incentivize good attorneys to take FTCA cases. As Congress recognized, good attorneys will not take FTCA cases if they cannot earn what they would normally receive in private practice. Indeed, Congress chose not to cap other payments associated with litigation. See North Atlantic & Gulf S.S. Co. v. United States, 209 F.2d at 489 (holding that "[t]he provisions for the allowance of attorney's fees in Title 28, Section 2678 relate to the fees attorneys may be allowed out of the amount recovered from the government and not to costs against the government in addition to such recoveries"). Based on this history, it makes sense to conclude that, if the legal industry's custom is to allow additional payments that the industry does not consider fees, the Court should allow individuals to contract for such payments in FTCA litigation. If Congress chose not to cap payments other than fees, then courts should not do so.

In New Mexico, it is standard practice for attorneys to ask their clients to pay the gross receipts tax obligations that attorneys incur by collecting attorney's fees. See, e.g., Law Office of Jay R. Mueller, http://www.jayrmueller.com/Attorney-Fees.html (last viewed July 17, 2018); Dathan Weems Law Firm, https://www.weemslaw.com/fee-details/ (last viewed July 17, 2018). The New Mexico legal industry considers gross receipts tax payments as a payment separate

---

amendment will bring the fees more nearly in line with those prevailing in private practice. Similarly, allowable fees for claims involving litigation have been raised from 20 to 25 percent.

112 CONG. REC. S14378 (June 27, 1966). Thus, although twenty-five percent sounds low by today's standards, Congress' intent in amending the FTCA was to "encourage attorneys to take these claims" by raising the fee cap to bring FTCA attorney's fees in line with those prevailing in private practice in the 1960s.

from attorney's fees. See, e.g., Law Office of Jay R. Mueller, http://www.jayrmueller.com/Attorney-Fees.html (last viewed July 17, 2018); Dathan Weems Law Firm, https://www.weemslaw.com/fee-details/ (last viewed July 17, 2018)(distinguishing between fees and gross receipts tax payments). Based on this industry custom, and in keeping with Congress' intent, the Court concludes that gross receipts tax payments are acceptable payments that do not count as fees for FTCA purposes.[6] Consequently, the Court will approve the settlement recommended in the Report -- $37,500.00 in attorney's fees, which is twenty-five percent of the settlement, plus gross receipts tax payments of $2,812.50, and costs of $16,249.32.[7] See Report at 7. The Court will also issue the parties' stipulated order, as they

---

[6]Despite the nature of the New Mexico gross receipts tax, which is similar to the federal income tax, New Mexico vendors often treat it much like a sales tax and pass it on to consumers. Attorneys commonly do the same. The Court would, however, view a settlement agreement stating that a client pay the attorney's federal income tax in an FTCA case as an end-run around Congress' fee cap.

[7]The Report explains that these "costs include filing fees, expert fees, travel expenses, and deposition fees." Report at 7. Although 28 U.S.C. § 1920 sets forth an enumerated list of "costs," that statute discusses what costs "a judge or clerk of any court of the United States may tax as costs," in contrast to what parties may agree to pay as costs in a settlement context. Yet, this statute is still persuasive, because it shows what Congress typically considers a cost in FTCA cases. Cf. Daniel A. Morris, Federal Tort Claims § 4:18 (2018)("A judgment for costs, not including the fees and expenses of attorneys, may be awarded in an action under the Federal Tort Claims Act. Recoverable costs are limited to those described in 28 U.S.C.A. § 1920."). Because the costs in the Report are similar to those listed in § 1920, the Court concludes that the costs listed in the Report can be fairly classified as costs and are not a de facto fee for FTCA purposes. 28 U.S.C. § 1920 considers "fees of the clerk and marshal," "docket fees," and "compensation of court appointed experts" as costs, and not attorney's fees. 28 U.S.C. § 1920(1),(5)-(6). Further, "Section 1920 permits recovery for the costs of taking, transcribing, and copying depositions necessarily obtained for use in the case." Furr v. AT&T Technologies, Inc., 824 F.2d 1537, 1550 (10th Cir. 1987). Given that § 1920 would permit recovery of these payments as costs, and not as attorney's fees, had this case not settled, the Court concludes that these payments are not a de facto fee for FTCA purposes. As for travel expenses, "travel is an expense that is usually charged to the client." Wirtz v. Kansas Farm Bureau Servs, Inc., 355 F. Supp. 2d 1190, 1209 (D. Kan. 2005)(Sebelius, M.J.). Accordingly, if the parties have agreed that travel expenses should come out of the total settlement as a cost, see Report at 7, the Court does not view such an arrangement as a de facto attorney's fees payment. While Congress has limited what the Court may award as costs if there is a judgment, Congress did not limit costs in this case's context,

requested at the hearing. See Tr. at 12:6-20 (Touchet).

**IT IS ORDERED** that the Unopposed Motion for Approval of the Settlement of Plaintiff Troy Dwayne Shaw's Claims, filed June 6, 2018 (Doc. 74), is granted. As per the parties' request, their stipulated order will also issue.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David J. Jaramillo
Jaramillo Law Firm, P.C.
Albuquerque, New Mexico

-- and --

Kelly A. Stout Sanchez
Martinez, Hart & Thompson, P.C.
Albuquerque, New Mexico

-- and --

Maria E. Touchet
Touchet Law Firm, P.C.
Albuquerque, New Mexico

	*Attorneys for the Plaintiff*

---

unless those costs look like an end-run around the attorney's fees cap.

John C. Anderson
  United States Attorney
Erin Langenwalter
Ruth Fuess Keegan
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Defendant*